IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. STONER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRIONNA P. STONER, APPELLANT.

Filed July 8, 2025.   Nos. A-24-976, A-24-977.

Appeals from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed as modified.

Kristi J. Egger, Lancaster County Public Defender, Sarah P. Newell, and Zachary Baker, Senior Certified Law Student, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

In these consolidated cases, Brionna P. Stoner appeals her plea-based convictions of violating a protection order, attempted possession of a controlled substance, and refusing a chemical test. Stoner's sole assignment of error on appeal is that the sentences imposed were excessive. The State argues that the sentences imposed were not excessive but that the district court's failure to impose a statutorily mandated $500 fine in connection with the sentence for refusing a chemical test was abuse of discretion. For the reasons set forth herein, we affirm as modified.

- 1 -

STATEMENT OF FACTS

In A-24-976, Stoner was charged with violation of a protection order with a prior conviction, a Class IV felony. In A-24-977, Stoner was charged with possession of oxycodone, a Class IV felony, and refusal of a chemical test, a Class W misdemeanor.

As part of a global plea agreement, Stoner pled guilty to violation of a protection order, a Class I misdemeanor; attempted possession of oxycodone, a Class I misdemeanor; and refusal of a chemical test, a Class W misdemeanor. Also, as part of the plea agreement, Stoner agreed to enter admissions to violating her probation in three separate cases.

Regarding Stoner's conviction for violation of a protection order, the State's factual basis set forth that on December 20, 2023, Lincoln police were dispatched to Mark Martinez' residence after learning from an adult probation officer that he believed his client, Stoner, had likely called 911 to report that Martinez had fallen down the stairs. Stoner was prohibited from being at that residence due to an active protection order. After waiving her *Miranda* rights, Stoner admitted to being at Martinez' residence and calling 911 after Martinez fell.

Regarding Stoner's convictions for attempted possession of oxycodone and refusal of a chemical test, the State provided a factual basis setting forth that on December 18, 2023, at 3:14 a.m., Lincoln police officers were dispatched based upon a report that a white Dodge Avenger with no front bumper was occupied by multiple females yelling and that there was a smell of burning plastic emitting from the vehicle. Officers arrived and contacted the occupant in the driver's seat of the vehicle, who was later identified as Stoner. The keys of the vehicle were in the center console, but the vehicle's lights were on, and Stoner was listening to music on the radio. Stoner was able to lower the vehicle's power windows to speak to the officers. The officers noticed that Stoner's speech was slurred, and they suspected that she was under the influence. Stoner provided an incorrect identification to officers, but they eventually determined her real name and arrested her on an active warrant. Officers then received Stoner's consent to secure the vehicle and officers asked if she wanted her purse, which had been observed in the back seat, transported to jail with her. Stoner declined. Stoner admitted that there were "percs" inside her purse but stated that she had a prescription. Officer asked permission to confirm that the pills were prescribed to her, and she agreed. Inside the purse, officers located an unmarked prescription pill bottle containing three round white pills marked 512, a clear snort tube with white powder residue, a red snort tube with white powder residue, and a blue/white pill crusher with white powder residue. The pills were identified as acetaminophen and oxycodone hydrochloride and were later confirmed to be oxycodone. Officers also located the paperwork for five separate prescriptions in Stoner's purse: three of those prescriptions were for acetaminophen and oxycodone hydrochloride, dated September 5, October 5, and October 19, 2023. None of the prescriptions matched the pills located. After waiving her *Miranda* rights, Stoner admitted to purchasing the pill crusher, snorting her pills, and snorting them prior to leaving her house. Following a drug recognition expert evaluation, the officer who conducted the evaluation opined that Stoner was under the influence of central nervous system depressants and was unsafe to be operating a motor vehicle. Stoner refused to provide a urine sample.

During the sentencing hearing, the court noted that it had reviewed the presentence investigation report (PSR) and noted:

> Probably of most significant note is that . . . Stoner was on probation and [had] . . . that probation revoked, primarily because she was not complying with the order of probation and committed other offenses while on probation.
>
> So she really takes that option off the table for me because what I know is that she will not follow the orders of probation.
>
> So having regard for the nature and circumstances of these crimes and the history, character, and condition of . . . Stoner, I do find that imprisonment is necessary for the protection of the public.
>
> I find the risk is substantial, during any period of probation, she'll engage in additional criminal conduct because that is the history that is presented to me.
>
> And [I] find that lesser sentences would depreciate the seriousness of these crimes and promote disrespect for the law.

The district court sentenced Stoner to 180 days' imprisonment each for misdemeanor violation of a protection order and attempted possession of oxycodone. For refusal of a chemical test, the court sentenced Stoner to 60 days' imprisonment, and a 6-month license revocation to commence upon her release, with interlock available after 90 days. Stoner's sentences were ordered to run consecutively, and she received credit for 1 day served. Stoner has timely appealed and is represented by the same counsel that represented her during the plea and sentencing.

## ASSIGNMENT OF ERROR

Stoner's sole assignment of error is that the sentences imposed are excessive.

## STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

## ANALYSIS

Stoner's sole assignment of error is that the sentences imposed were excessive. Specifically, she contends that the court failed to properly consider her personal circumstances and the nonviolent nature of the offenses.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Alkazahy, supra*. In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness

of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Stoner was convicted of attempted possession of oxycodone, a Class I misdemeanor; violation of a protection order, a Class I misdemeanor; and refusal of a chemical test, a Class W misdemeanor. See Neb. Rev. Stat. § 42-924 (Cum. Supp. 2024) (violation of protection order); Neb. Rev. Stat. § 28-201(4)(e) (Reissue 2016) (criminal attempt); Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2024) (prohibited acts; controlled substances); Neb. Rev. Stat. § 60-6,197 (Reissue 2021) (DUI; implied consent); Neb. Rev. Stat. § 60-6,197.03(1) (DUI; implied consent; penalties).

Stoner's sentences of 180 days' imprisonment for attempted possession of oxycodone and violation of a protection order are within the statutory sentencing range for Class I misdemeanors, which are punishable by a minimum of no imprisonment and a maximum of not more than 1 year of imprisonment and/or a $1,000 fine. See Neb. Rev. Stat. § 28-106 (Reissue 2016).

Stoner's sentence of 60 days' imprisonment for first offense refusal of a chemical test is the maximum sentence for first offense Class W misdemeanors. See § 28-106. The court also properly imposed a 6-month license revocation to commence upon Stoner's release pursuant to § 60-6,197.03(1). However, § 28-106 requires that the penalty for conviction of a Class W misdemeanor also includes, as a mandatory minimum, a $500 fine, which was not imposed by the district court. See § 28-105. A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review. *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime. *State v. Alba*, 13 Neb. App. 519, 697 N.W.2d 295 (2005). Here, because the $500 fine is statutorily mandated, we modify Stoner's sentence to reflect the $500 fine. See *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015) (Nebraska Supreme Court affirmed sentences as modified to correct plain error).

The PSR noted that Stoner was 26 years old, single, with two dependents. She had an 11th grade education. She had her first encounter with law enforcement when she was approximately 13 years old. She reported that she was arrested for possession of marijuana and was placed on probation for 3 years. Stoner's criminal history included four convictions for failure to appear and convictions for unlawful possession of paraphernalia, distribution of a controlled substance, possession of a controlled substance, conspiracy to deliver/manufacture/possess a controlled substance, carrying firearms after conviction, disturbing the peace, third degree domestic assault, violation of a protection order, third degree assault, and theft (less than $500). Stoner has had her probation revoked three times and has outstanding warrants from Oklahoma and Kansas. The level of service/case management inventory assessed Stoner as a very high risk to reoffend. Stoner has been diagnosed with mental health issues including bipolar I disorder, generalized anxiety disorder, panic disorder, and generalized social phobia, and she has a history of drug use including marijuana, methamphetamine, LSD, ecstasy, and mushrooms, and abusing prescription pills including hydrocodone, Percocet, and fentanyl.

Based upon factors that the sentences imposed, as modified, are within the appropriate statutory sentencing ranges, Stoner's criminal history, her prior unsuccessful attempts at probation, and her very high risk to reoffend, the sentences, as modified, are not an abuse of discretion.

## CONCLUSION

We affirm Stoner's convictions and sentences with the modification that Stoner's sentence for first offense refusal of a chemical test includes a $500 fine.

 AFFIRMED AS MODIFIED.